# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff**, vs. GUILLERMO LEGARREA, **Defendants**. | Case No. 19-cr-100-CJW **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS** |

_____

## I.     INTRODUCTION

The matter before the Court is Defendant's Motion to Suppress. (Doc. 15.) The Government timely resisted the motion. (Doc. 26.)

On September 11, 2019, the Grand Jury charged Defendant with Possession of a Firearm by an Unlawful Drug User in violation of 18 U.S.C. Section 922(g)(3). (Doc. 2.) The charges arose after a routine traffic stop for a suspected driving violation revealed that Defendant was driving while under the influence of alcohol and the arresting officer searched Defendant incident to arrest. The officer found cocaine on Defendant's person and a subsequent search of Defendant's vehicle yielded a pistol and other suspected contraband.

The Honorable Charles J. Williams, United States District Court Judge, referred this motion to me for a Report and Recommendation. On December 20, 2019, I held an evidentiary hearing on Defendant's motion. The Government called two witnesses: former Hiawatha, Iowa Police Officer Adam Kirkpatrick[1] and current Officer James

---

[1] Mr. Kirkpatrick left law enforcement for a job in the private sector in March 2019.

Vick. The following exhibits were admitted into evidence without objection: Government's Exhibits 1 and 2 and Defendant's Exhibits A, B, and C.

For the following reasons, I respectfully recommend that the Court **DENY Defendant's Motion to Suppress.**

## II.     FACTUAL BACKGROUND

The facts of this case are not in dispute. At approximately 6:52 p.m. on December 3, 2018, Hiawatha, Iowa Police Officer Adam Kirkpatrick conducted a routine registration check of a white Chevrolet Express van driving in front of him. (Kirkpatrick Dec. 20, 2019 Hr'g Test. at 4–5.)[2] Officer Kirkpatrick testified that it was a common duty when on patrol to check for stolen vehicles. (*Id.* at 6-7.) The check revealed that the van was registered to Guillermo Legarrea, the defendant in this case, and that Mr. Legarrea's driver's license status was "OTHER NOT VALID," which meant his license was suspended. (*Id.* at 7–9.) It was dark and Officer Kirkpatrick was driving behind the van. (*Id.* at 6.) He could not tell if Defendant was driving or if there was a passenger because the van had no windows other than the windshield and driver's and passenger's-side front windows. (*Id.*) Officer Kirkpatrick decided to stop the van to determine if Defendant was driving illegally. (*Id.* at 10–11.)

The van did not stop immediately when Officer Kirkpatrick attempted to conduct a traffic stop. (*Id.* at 11.) Instead, the van traveled for about 30 seconds after Officer Kirkpatrick turned on his top lights and eventually pulled into the parking lot of a condominium complex. (*Id.* at 10–11.) Officer Kirkpatrick testified that Defendant parked at an odd angle between two cars, which prevented Officer Kirkpatrick from

---

[2] Citations to the hearing transcript are to the Court Reporter's rough draft of the hearing transcript provided to the Court as a courtesy. No official transcript had been filed with the Court at the time this Report and Recommendation was filed.

safely approaching the van. (*Id.* at 11-12.) Defendant resided at the complex, where he shared a condominium unit with his girlfriend. (*Id.* at 29, 33.)

Officer Kirkpatrick testified that when he asked Defendant to walk towards him, Defendant was slow to respond and seemed confused. (*Id.* at 14.) Defendant also had bloodshot watery eyes and smelled like alcohol. (*Id.* at 14-15; Def. Ex. A at 2.) When Officer Kirkpatrick asked Defendant if he had been drinking, Defendant initially said he had a beer, but as the conversation continued, he admitted he had three beers. (*Id.* at 15-16; Def. Ex. A at 2.) When Officer Vick arrived on the scene, he looked through the windows of the van to make certain there were no other passengers and saw open alcohol containers on the passenger-side floorboards of the van. (Vick Dec. 20, 2019 Hr'g Test. at 49-50.) Officer Vick testified that open containers in a vehicle can be indicative of drinking and driving. (*Id.* at 50.)

Defendant refused to submit to field sobriety tests. (Kirkpatrick Hr'g Test. at 18.) Officer Kirkpatrick then arrested him for suspicion of OWI and operating a motor vehicle without a valid license. (*Id.*) During a search of Defendant incident to arrest, Officer Kirkpatrick found a small white plastic baggie in Defendant's sock that contained a substance that, consistent with his training and experience, Officer Kirkpatrick, suspected was cocaine. (*Id.* at 18-20.) During this encounter, several individuals gathered in the parking lot or on balconies to watch the activities in the parking lot. (*Id.* at 21, 33.)

Based on their observations and on Officer Kirkpatrick's search of Defendant, the officers believed the van contained evidence of the crimes of possession of drugs, driving under the influence, and open container. (*Id.* at 20-21; Vick Hr'g Test. at 55.) They decided to conduct a warrantless search of the van for evidence of those crimes because they believed the parking lot was not secure with so many people around. (Def. Ex. A at 2.) Officer Vick testified that he and Officer Kirkpatrick were the only Hiawatha police officers on duty that night. (Vick Hr'g Test. at 56.) Inside the van, they found

not only empty alcohol bottles, but also a black backpack "directly next to the driver's seat," between the two front seats, with a closed Miller Lite bottle in the side pocket. (Kirkpatrick Hr'g Test. at 23.)  Inside the backpack, the officers found a loaded black Colt Mustang XSP .380 ACP pistol with a magazine loaded with .380 cartridges, mail addressed to Defendant at his address, approximately $9000 in cash, and a brown pill bottle containing one and one-half prescription alprazolam tablets. (Def. Ex. A at 2.) Defendant did not have a prescription for alprazolam. The officers also found multiple cell phones and a tablet inside in the van. (*Id.* at 3.)[3]

Defendant was transported to the Linn County Correctional Facility, where he refused to provide breath and urine specimens, but participated in a *Mirandized* interview and made incriminating statements. (Def. Ex. A.)  Based on the evidence found in Defendant's van and his statements during the interview, officers obtained search warrants for Defendant's condominium and Defendant's digital devices. (Def. Ex. C.) Linn County Sheriff's Deputies secured the condominium while waiting for the warrant. (Kirkpatrick Hr'g Test. at 44-45; Vick Hr'g Test. at 58.)  During the search of the condominium, officers found more contraband. The substance in the baggie found in Defendant's sock tested positive for cocaine. One of Defendant's phones contained incriminating text messages and recordings.

### III.  DISCUSSION

#### A.  *The Parties' Positions*

Defendant asserts that Officer Kirkpatrick did not have reasonable suspicion to stop his van on December 3, 2018; that officers were required to obtain a warrant before

---

[3] After the search was conducted, the officers locked the van and left it in the parking lot. The van was not impounded. Defendant attempted to use this fact to undermine the officers' "unsecure parking lot" justification for the warrantless search. I do not find that leaving the van in the parking lot after the relevant evidence was removed weakens the justification for conducting a warrantless search.

searching the van and the backpack; and that all fruits of the "illegal stop and search of the [van]," including evidence found in his van and condominium and statements he made during his interview must be suppressed as fruits of an illegal stop, seizure, and search.[4] (Doc. 15-1.)

In response, the Government argues that Officer Kirkpatrick had reasonable suspicion to stop Defendant's van because a routine check revealed that the vehicle's registered owner (Defendant) had an invalid driver's license; that pursuant to that traffic stop, Defendant was arrested for suspicion of operating while intoxicated; and during a search incident to arrest, Defendant was found to possess a controlled substance on his person. (Doc. 26-1 at 1.) The Government further asserts that because the controlled substance was found on Defendant's person and empty containers of alcohol could be seen on the van's floor, Officers Kirkpatrick and Vick had probable cause to search Defendant's van. (*Id.*) Lastly, the Government argues that because the stop and search were permissible, Defendant's "fruits of the poisonous tree" argument is inapplicable. (*Id.* at 10.)

## B.    *Whether Officer Kirkpatrick had Probable Cause to Stop Defendant's Van*

The Fourth Amendment protects persons against unreasonable searches and seizures. U.S. Const. amend. IV. "Under the Fourth Amendment, a traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington,* 455 F.3d 824, 826 (8th Cir. 2006) (citation omitted). Even a minor traffic violation can provide probable cause for a traffic stop. *United States v. Fuehrer*, 844 F.3d 767, 772 (8th Cir. 2016) ("[I]f police observe a traffic violation, no matter how minor, there is probable cause to stop the vehicle.") (citations omitted). "[A] traffic stop entails a seizure of the

---

[4] Defendant does not assert arguments related to the evidence found on his cell phone.

driver 'even though the purpose of the stop is limited and the resulting detention quite brief.'" *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *Delaware v. Prouse*, 440 U.S. 648, 653 (1979) and citing *Whren v. United States*, 517 U.S. 806, 809–10 (1996)); *United States v. Mendoza*, 691 F.3d 954, 957 (8th Cir. 2012) (same).

Defendant argues that there "is no indication in [Officer Kirkpatrick's] report that the officer had information one way or the other regarding whether the registered owner was driving the vehicle." (Doc. 15-1 at 2 (citing Def. Ex. A).) Therefore, according to Defendant, Officer Kirkpatrick lacked reasonable suspicion to stop the van.

The Eighth Circuit has addressed a situation very similar to the one at bar. In *United States v. Chartier*, a police officer on patrol in Hiawatha, Iowa conducted a routine license plate check and discovered that the owner of the vehicle, a white male, did not currently have a valid driver's license. 772 F.3d 539, 542 (8th Cir. 2014). It was dark, snowing, and misting. *Id.* The officer could not see who was driving the vehicle but could see two heads above the headrests. *Id.* The officer was unable to pull up next to the vehicle to see who was driving because they were travelling on a two-lane street. *Id.* The officer initiated a traffic stop and discovered that the driver was a female and that the passenger, the defendant in the case, was a male. *Id.* While speaking with the occupants of the vehicle, the officer noticed items used to make methamphetamine at the feet of the defendant. *Id.* The officer also recognized the defendant's name as someone involved in the manufacture of methamphetamine. *Id.* Searches of the defendant's pockets yielded contraband consistent with methamphetamine trafficking. *Id.*

The defendant challenged the stop of the vehicle because the driver was female and "easily visibly distinguishable from the male registered owner." *Id.* at 543. The court disagreed, holding that because only the back of the driver's head was visible and because the weather and road situation made it impossible to safely pull up alongside the vehicle to identify the driver, the Fourth Amendment did not require the officer to

6

affirmatively identify the driver or make further inquiries prior to initiating a traffic stop. *Id.* In so holding, the court relied on *Delaware v. Prouse*, 440 U.S. 648, 663 (1979), which held, "If there is an 'articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered,' a traffic stop on that basis is not unreasonable under the Fourth Amendment." *Id.*

I find that Officer Kirkpatrick had reasonable suspicion to stop Defendant's van on December 3, 2018. The Chevy Express van did not have rear or side windows, making it impossible for Officer Kirkpatrick to identify the driver from his position behind the vehicle. (Dec. 20, 2019 Hr'g Trans. at 6.) Additionally, Robins Road is a two-lane road and it was dark. *Id.* Officer Kirkpatrick could not safely position himself next to Defendant's vehicle to identify whether the driver could be the registered owner before initiating the traffic stop. *Id.* The circumstances surrounding the traffic stop in the instant case place it on all fours with *Chartier*. Accordingly, Officer Kirkpatrick was not required to positively identify Defendant as the registered driver before initiating the December 3 traffic stop. Under *Chartier*, the routine registration check yielding an "OTHER NOT VALID" result provided articulable and reasonable suspicion that the van's driver was unlicensed and thus justification to stop the van.

Defendant points to *Kansas v. Glover*, No. 18-556 (argued Nov. 4, 2019), currently under consideration by the Supreme Court, which addresses a circuit split regarding whether officers need to know the identity of the driver of a vehicle registered to an owner whose license is invalid before stopping the vehicle. (Doc. 15-1 at 3.) *Chartier* was binding Eighth Circuit precedent at the time of the arrest. Officer Kirkpatrick reasonably relied on *Chartier* in initiating the traffic stop. (Doc. 26-1 at 7–8.) Therefore, the outcome of *Glover* will not affect the ultimate disposition of this issue.

I find that there was probable cause for the December 3, 2018 traffic stop.

7

## C. Whether Officers had Probable Cause to Conduct a Warrantless Search of the Van

Warrantless searches are *per se* unreasonable, with a few well-established exceptions. *United States v. Kennedy*, 427 F.3d 1136, 1140 (8th Cir. 2005). "The so-called 'automobile exception' permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *Id.* at 1140-41. "Probable cause is determined by the totality of the circumstances, and exists when the facts are sufficient for a reasonable person to believe that contraband or evidence of a crime will be found in the place to be searched." *United States v. Martinez*, 78 F.3d 399, 401 (8th Cir. 1996) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)). If probable cause justifies the search of a vehicle, then it permits the search of every part of the vehicle and its contents that may conceal the object of the search, including closed containers. *United States v. Stringer*, 739 F.3d 391, 395 (8th Cir. 2014) (discussing the automobile exception to the warrant requirement) (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)).

I find that the officers had probable cause to search Defendant's van. Defendant is correct that a warrant is generally required when performing a search. (Doc. 15-1 at 4.) *Arizona v. Gant*, cited by Defendant, nevertheless recognizes the automobile exception to the general rule, meaning a warrant is not required when the officers have probable cause to believe that the vehicle contains evidence of a crime. 556 U.S. 332, 351 (2009). In *Gant*, the officers stopped and arrested the defendant because he was driving with a suspended license. *Id.* at 335. The Court found that the automobile exception did not apply, because the defendant "was arrested for driving with a suspended license—an offense for which police could not expect to find evidence in the passenger compartment of [defendant's] car." *Id.* at 344. The officers in *Gant* only became aware

8

of an additional crime regarding possession of a controlled substance after searching the vehicle. *Id.* at 336.

The factual situation in *Gant* can be distinguished from that of the instant case. Here, Defendant was initially stopped for driving with an invalid license, but after interacting with Defendant, Officer Kirkpatrick became aware of additional facts that led him to conclude that crimes beyond driving with an invalid license had occurred. (Kirkpatrick Hr'g Test. at 14–20.) Defendant exhibited indicators of being intoxicated, and during a pat down, Officer Kirkpatrick found what he believed to be cocaine in Defendant's sock. *Id.* at 19–20. Officer Vick also saw empty alcohol containers on the floorboard of the van prior to the search. (Vick Hr'g Test. at 55.) These facts came to light prior to any search of the vehicle and led the officers to conclude that Defendant was driving under the influence of alcohol, had a controlled substance in his possession, and possessed open containers. (Kirkpatrick Hr'g Test. at 14–20, 22–23.) At that point, it became reasonable for the officers to believe that the vehicle would contain evidence of crimes such as operating while intoxicated, possession of a controlled substance, and open container.[5] This justified a search without a warrant under the automobile exception. *Gant* explicitly recognized that officers may "conduct a vehicle search when . . . it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 346. This is precisely the situation in which Officers Kirkpatrick and Vick found themselves in the instant case. Furthermore, because there was probable cause to believe the van contained evidence of criminal activity, the officers were authorized to search any area of the van in which evidence might be found, including closed containers. *Id.* at 347; *Stringer*, 739 F.3d at 395.

---

[5] Iowa Code Section 321.284 proscribes possessing open or unsealed containers of alcohol in the passenger area of a motor vehicle.

9

Defendant also cites *Riley v. California*, 573 U.S. 373 (2014) for the proposition that "it is generally unreasonable for law enforcement to undertake a warrantless search to discover evidence of criminal wrongdoings." (Doc. 15-1 at 5.) Although this is a correct statement of the law, *Riley* was decided in the context of a warrantless search of a cell phone. 573 U.S. at 403. The automobile exception was not at issue in *Riley* and thus is inapplicable in the instant case.

Accordingly, I find that under the totality of the circumstances present during the December 3 traffic stop, the officers had probable cause to perform a warrantless search of Defendant's van pursuant to the automobile exception.

### D. *Whether Fruits of the Traffic Stop and Search of Van Must be Suppressed*

Evidence obtained as a result of an unconstitutional search or seizure must be suppressed as well as any evidence later discovered to be an illegal "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984) (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)). "Any evidence secured through an unreasonable, hence illegal, search and seizure may not be used in a federal prosecution, nor may the fruit of such tainted evidence be admitted against the defendant whose privacy rights were originally violated." *United States v. Conner*, 948 F. Supp. 821, 829 (N.D. Iowa 1996) (citing *Weeks v. United States*, 232 U.S. 383 (1914); *Wong Sun*, 371 U.S. at 484-88). However, the evidence must be suppressed only if the "illegality is at least a but-for cause of obtaining the evidence." *United States v. Riesselman*, 646 F.3d 1072, 1079 (8th Cir. 2011) (quoting *Olivera-Mendez*, 484 F.3d at 511).

I find that the "fruit of the poisonous tree" doctrine is inapplicable in the instant case. There was no unconstitutional stop, search, or seizure because Officer Kirkpatrick had probable cause to initiate the December 3 traffic stop and to perform a warrantless search of Defendant's van. There was no constitutional violation leading to the evidence at issue in this case.

## *IV. CONCLUSION*

For the reasons set forth above, I respectfully recommend the District Court **DENY** Defendant's Motion to Suppress Evidence. **(Doc. 15.)**

**To allow for an expedited final ruling**, objections to this Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1) must be filed within **TEN (10) days** of the service of a copy of this Report and Recommendation. *See United States v. Vasquez-Martinez*, No. 6:05CR60016-001, 2006 WL 376474, at *8 (W.D. Ark. Feb. 9, 2006) (seven days for objections); *Kato Eng'g, Inc. v. Hanley*, 367 F. Supp. 3d 918, 925 (D. Minn. 2018) (referral order included order for expedited review of R. & R.). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Crim. P. 59. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** at Cedar Rapids, Iowa, this 31st day of January, 2020.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa