# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 19-CR-100-CJW-MAR |
| vs. | **ORDER** |
| GUILLERMO LEGARREA, | |
| Defendant. | |

## I. INTRODUCTION

This matter is before the Court on a Report and Recommendation ("R&R") (Doc. 32) of the Honorable Mark A. Roberts, United States Magistrate Judge. On December 2, 2019, defendant filed a motion to suppress. (Doc. 15). On December 9, 2019, the government timely filed a resistance. (Doc. 26). On December 20, 2019, Judge Roberts held a hearing on defendant's motion. (Doc. 30). On January 31, 2020, Judge Roberts issued his R&R, recommending that the Court deny defendant's motion. (Doc. 32). The deadline for filing objections to the R&R was February 10, 2020. On February 10, 2020, defendant filed only legal objections to the R&R. (Doc. 37). The government did not file any objections.

For the following reasons, the Court **overrules** defendant's objections (Doc. 37), **adopts** Judge Roberts' R&R with modification (Doc. 32), and **denies** defendant's motion to suppress (Doc. 15).

## II. STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R under the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*See also* FED. R. CIV. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen de novo review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620–19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection

has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94–1609, at 3, reprinted in 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect Section 636(b))). Thus, although de novo review generally entails review of an entire matter, in the context of Section 636 a district court's required de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1).

Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger de novo review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has concluded that general objections require "full de novo review" if the record is concise. *Id.* ("Therefore, even had petitioner's objections lacked specificity, a de novo review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this Court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Ass'n v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate.").

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has

expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to FED. R. CIV. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed).

The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3d 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this Court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73

F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the Court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153–54. Thus, although a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.

### III. FACTUAL BACKGROUND

After reviewing the record, the Court finds that Judge Roberts accurately and thoroughly summarized the relevant facts in his R&R. (Doc. 32, at 2-4). Further, neither party objects to the R&R's factual findings. *See* (Doc. 37, at 3). Thus, the Court adopts the R&R's factual findings with one minor modification as indicated below.

> The facts of this case are not in dispute. At approximately 6:52 p.m. on December 3, 2018, Hiawatha, Iowa Police Officer Adam Kirkpatrick [("Officer Kirkpatrick")] conducted a routine registration check of a white Chevrolet Express van driving in front of him. (Kirkpatrick Dec. 20, 2019 Hr'g Test. at 4–5.) Officer Kirkpatrick testified that it was a common duty when on patrol to check for stolen vehicles. (*Id.* at 6-7.) The check revealed that the van was registered to Guillermo Legarrea, the defendant in this case, and that Mr. Legarrea's driver's license status was "OTHER NOT VALID," which meant his license was suspended. (*Id.* at 7–9.) It was dark and Officer Kirkpatrick was driving behind the van. (*Id.* at 6.) He could not tell if Defendant was driving or if there was a passenger because the van had no windows other than the windshield and driver's and passenger's side front windows. (*Id.*) Officer Kirkpatrick decided to stop the van to determine if Defendant was driving illegally. (*Id.* at 10–11.)

The van did not stop immediately when Officer Kirkpatrick attempted to conduct a traffic stop. (*Id.* at 11.) Instead, the van traveled for about 30 seconds after Officer Kirkpatrick turned on his top lights and eventually pulled into the parking lot of a condominium complex. (*Id.* at 10–11.) Officer Kirkpatrick testified that Defendant parked at an odd angle between two cars, which prevented Officer Kirkpatrick from safely approaching the van. (*Id.* at 11-12.) Defendant resided at the complex, where he shared a condominium unit with his girlfriend. (*Id.* at 29, 33.)

Officer Kirkpatrick testified that when he asked Defendant to walk towards him, Defendant was slow to respond and seemed confused. (*Id.* at 14.) Defendant also had bloodshot watery eyes and smelled like alcohol. (*Id.* at 14-15; Def. Ex. A at 2.) When Officer Kirkpatrick asked Defendant if he had been drinking, Defendant initially said he had [four or five] beer[s], but as the conversation continued, he [stated] he had three beers.[1] (*Id.* at 15-16; Def. Ex. A at 2.) When Officer [James] Vick [("Officer Vick")] arrived on the scene, he looked through the windows of the van to make certain there were no other passengers and saw open alcohol containers on the passenger-side floorboards of the van. (Vick Dec. 20, 2019 Hr'g Test. at 49-50.) Officer Vick testified that open containers in a vehicle can be indicative of drinking and driving. (*Id.* at 50.)

Defendant refused to submit to field sobriety tests. (Kirkpatrick Hr'g Test. at 18.) Officer Kirkpatrick then arrested him for suspicion of OWI and operating a motor vehicle without a valid license. (*Id.*) During a search of Defendant incident to arrest, Officer Kirkpatrick found a small white plastic baggie in Defendant's sock that contained a substance that, consistent with his training and experience, Officer Kirkpatrick, suspected was cocaine. (*Id.* at 18-20.) During this encounter, several individuals gathered in the parking lot or on balconies to watch the activities in the parking lot. (*Id.* at 21, 33.)

Based on their observations and on Officer Kirkpatrick's search of Defendant, the officers believed the van contained evidence of the crimes of possession of drugs, driving under the influence, and open container. (*Id.* at 20-21; Vick Hr'g Test. at 55.) They decided to conduct a warrantless search of the van for evidence of those crimes because they believed the parking lot was not secure with so many people around. (Def.

---

[1] The R&R states that defendant initially claimed to only have "a beer." (Doc. 32, at 3). Officer Kirkpatrick's bodycam video shows defendant initially claimed he had "four or five" beers before changing his answer to three. (Ex. 1 at 2:00, 5:33).

Ex. A at 2.) Officer Vick testified that he and Officer Kirkpatrick were the only Hiawatha police officers on duty that night. (Vick Hr'g Test. at 56.) Inside the van, they found not only empty alcohol bottles, but also a black backpack "directly next to the driver's seat," between the two front seats, with a closed Miller Lite bottle in the side pocket. (Kirkpatrick Hr'g Test. at 23.) Inside the backpack, the officers found a loaded black Colt Mustang XSP .380 ACP pistol with a magazine loaded with .380 cartridges, mail addressed to Defendant at his address, approximately $9000 in cash, and a brown pill bottle containing one and one-half prescription alprazolam tablets. (Def. Ex. A at 2.) Defendant did not have a prescription for alprazolam. The officers also found multiple cell phones and a tablet inside in the van. (*Id.* at 3.)[2]

Defendant was transported to the Linn County Correctional Facility, where he refused to provide breath and urine specimens, but participated in a *Mirandized* interview and made incriminating statements. (Def. Ex. A.) Based on the evidence found in Defendant's van and his statements during the interview, officers obtained search warrants for Defendant's condominium and Defendant's digital devices. (Def. Ex. C.) Linn County Sheriff's Deputies secured the condominium while waiting for the warrant. (Kirkpatrick Hr'g Test. at 44-45; Vick Hr'g Test. at 58.) During the search of the condominium, officers found more contraband. The substance in the baggie found in Defendant's sock tested positive for cocaine. One of Defendant's phones contained incriminating text messages and recordings.

(Doc. 32, 2-4) (alterations added).

## IV.  ANALYSIS

In his objections, defendant argues that Judge Roberts erred in concluding (1) that officers had reasonable suspicion to stop his vehicle because it was registered to an owner with an invalid license and (2) that probable cause was present to search defendant's

---

[2] In a footnote, Judge Roberts added: "After the search was conducted, the officers locked the van and left it in the parking lot. The van was not impounded. . . . I do not find that leaving the van in the parking lot after the relevant evidence was removed weakens the justification for conducting a warrantless search." (Doc. 32, at 4 n.3).

vehicle under the automobile exception to the warrant requirement. (Doc. 37, at 3-11). The Court will address each argument in turn.

### A. *Stop of Defendant's Vehicle*

In his R&R, Judge Roberts found that Officer Kirkpatrick had reasonable suspicion to stop defendant's vehicle because the vehicle was registered to defendant, who was recorded as an unlicensed driver. (Doc. 32, at 5-7). Relying on *United States v. Chartier*, 772 F.3d 539 (8th Cir. 2014), Judge Roberts concluded that Officer Kirkpatrick "was not required to positively identify" defendant as the driver of the vehicle before initiating the stop under the circumstances here. (*Id.*, at 7). Judge Roberts held that it was not possible for Officer Kirkpatrick to identify defendant because defendant's vehicle had no windows other than the windshield and driver's and passenger's side-front windows, the stop occurred on a two-lane road, and it was dark outside. (*Id.*).

Defendant objects, arguing "that when a vehicle fits the general category of cars on the road in urban areas that have return a positive hit for unlicensed driver, there is not sufficient individualized suspicion to stop that vehicle." (Doc. 37, at 4-5). Defendant asserts that vehicles are often driven by people other than the registered owner. (*Id.*, at 5). Defendant compares the facts here to dorm rooms, arguing that just because "most dorm rooms contain narcotics" does not allow police to search any dorm room without a warrant. (*Id.*, at 5-6). Defendant also asserts that "[b]ecause a vehicle in an urban area is likely not going too far, the police can . . . honor the [c]onstitutional protections against unreasonable seizures [or] do their job by simply following the vehicle until it stops and then determining who the driver is." (*Id.*, at 6). Because defendant was driving in an urban area, he argues Officer Kirkpatrick could have easily pulled up alongside his driver-side window to identify him. (*Id.*).

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable

searches and seizures." U.S. CONST. amend. IV. A person is seized within the meaning of the Fourth Amendment "when the officer, by means of physical force or show of authority, terminates or restrains their freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal quotation marks omitted). Officers may conduct a routine license plate check of a vehicle in their database without any level of suspicion. *See, e.g.*, *United States v. Mahr*, No. 8:12CR222, 2012 WL 5471901, at *1 (D. Neb. Oct. 22, 2012); *United States v. Wiggins*, No. 09-00169-01-CR-W-SOW, 2010 WL 2674034, at *1 (W.D. Mo. June 7, 2010); *United States v. Arista-Herrera*, No. 8:05CR301, 2006 WL 680891, at *1 (D. Neb. Feb. 21, 2006). A traffic stop, however, is a seizure subject to Fourth Amendment protections. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). "[A] traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). A reasonable suspicion is "[a] particularized and objective basis, supported by specific and articulable facts, for suspecting a person of criminal activity." *Black's Law Dictionary* 18C (11th ed. 2019). If there is an "articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered," a traffic stop is proper under the Fourth Amendment. *Prouse*, 440 U.S. at 663.

In *Chartier*, the Eighth Circuit Court of Appeals held that an officer properly stopped a vehicle after determining the vehicle's registered owner did not have a valid license to drive despite not "affirmatively identify[ing]" the driver. 772 F.3d at 543. The court noted that it was "dark, snowing, and misting" and the officer could only see the back of two heads in the vehicle, in the driver's and front-passenger's seats respectively. *Id.*, at 541-42. The stop also occurred on a two-lane road, which prevented the officer from pulling-up alongside the vehicle to better see the driver. *Id.*, at 543. In their respective opinions in *Chartier*, neither the Eighth Circuit Court of

9

Appeals nor this Court discussed whether the stop occurred on a rural or urban road. *See id.*; No. 13-CR-18-LRR, 2013 WL 5719482 (N.D. Iowa Oct. 21, 2013). The R&R in *Chartier* mentions that the stop occurred near Hiawatha, Iowa on North Center Point Road, which is a rural road, but it does not ascribe any importance to this fact. No. CR13-0018, 2013 WL 5719483 (N.D. Iowa Aug. 16, 2013). The Eighth Circuit Court of Appeals held only that, "[g]iven the road and weather conditions," the officer need not conduct any further investigation into the identity of the driver before stopping the vehicle. 772 F.3d at 543.

The Court finds that Officer Kirkpatrick had reasonable suspicion to stop defendant's vehicle here. Defendant's comparison to dorm rooms in inapt. Reasonable suspicion here was not based on a broad generalization. For example, the stop here did not occur based on some broad assertion that most windowless vans are involved in criminal activity and hence all windowless vans can be stopped and searched without a warrant. Officer Kirkpatrick ran the plates on defendant's vehicle through the police department's database, which is permitted without any level of suspicion, and discovered that the vehicle was registered to an unlicensed driver. It is very likely that the registered owner of a vehicle is the person driving the vehicle. The Court acknowledges, as defendant points out, that it is possible that someone other than the registered owner could be the driver. The test for a stop, however, is reasonable suspicion, not certainty. Officer Kirkpatrick's suspicion here was not based on any broad categorization but on the specific facts that the vehicle he witnessed driving on the road was registered to a person that did not have a valid license and it was likely that the driver was the registered owner. The Court also finds that the facts here are substantially similar to those in *Chartier*. Officer Kirkpatrick could not see into defendant's vehicle because it had no rear or back-side windows and it was dark. Moreover, defendant and Officer Kirkpatrick were driving on a two-lane road which prevented Officer Kirkpatrick from

pulling up alongside defendant's vehicle. Under these circumstances, it was impractical for Officer Kirkpatrick to further investigate the identity of the driver in a safe manner without stopping the vehicle.

The Court rejects defendant's argument that this case is distinguishable because the stop here occurred on an urban road. *Chartier* placed no emphasis on the fact that the stopped there occurred on a rural road. *See* 772 F.3d 539; 2013 WL 5719482; 2013 WL 5719483. It is pure speculation that a vehicle driving in an urban area "is likely not travelling too far." (Doc. 37, at 6). It is also immaterial that defendant "was almost 'home.'" (*Id.*). Neither of these facts are relevant to defendant's offenses or prevent police from stopping a vehicle. Defendant appears to argue that if police encounter a vehicle in an urban area, they either cannot stop it or must wait until it stops. Defendant provides no authority for this proposition. Defendant is correct that an urban road, likely with many stop signs and streetlights, would cause a travelling vehicle to stop more frequently than on a rural road. The broader and more relevant question, however, is not whether the vehicle is on an urban or rural road, but to what extent officers could reasonably and safely investigate the identity of the driver further without stopping the vehicle. The Court agrees that, in some cases, a vehicle travelling on an urban road may afford police more opportunities to investigate as a result of frequent stops. Indeed, the speed of a vehicle and whether it is stationary or moving are relevant considerations. The Court also notes, however, that the identity of a driver can be investigated safely on a four-lane rural road without stopping at all. Thus, other relevant considerations must be accounted for, such as weather conditions, visibility, lighting, the make and model of the vehicle, the condition of the vehicle's windows, and the layout of the road. As discussed, the Court finds that the totality of these facts here shows that Officer Kirkpatrick could not practically and safely investigate the identity of the driver further without stopping defendant's vehicle.

In any event, the Constitution does not require officers to avoid or delay making a Terry stop on the hope that some other event will transpire to obviate the need. Defendant suggests that because he was driving in an urban area the officer should have just followed him for however long as was necessary to wait for the driver to exit the vehicle to determine who was driving. Nothing in the Constitution requires officers to do this. So long as an officer has a reasonable suspicion that a crime is occurring the officer has the right to make a stop, regardless of whether the officer's suspicions could be allayed by other developments if only he waited and followed the suspect for a longer period of time. In any event, had the officer here followed the van to the condominium parking lot, the officer would have seen defendant get out of the van and the result here would have been the same.

Thus, the Court **overrules** defendant's objections (Doc. 37, at 3-7) and **adopts** Judge Roberts' R&R without modification on this issue.

### *1. Benefit of Appellate Decisions and Good Faith*

In his R&R, Judge Roberts acknowledged that the United States Supreme Court is currently considering the constitutionality of a similar traffic stop in *Kansas v. Glover*, No. 18-556. (Doc. 32, at 7). Judge Roberts concluded that the resolution of *Glover* is irrelevant here because Officer Kirkpatrick reasonably relied on existing Eighth Circuit precedent, *see Chartier*, 772 F.3d at 542. (*Id.*). Defendant objects, asserting that the resolution of *Glover* is outcome-determinative here. (Doc. 37, at 7). The Court finds that Judge Roberts' conclusion on this issue was correct but requires elaboration.

"[N]ewly announced rules of constitutional criminal procedure must apply retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception." *Davis v. United States*, 564 U.S. 229, 243 (2011) (quoting *Griffith v. Kentucky*, 479 U.S. 314, 107 (1987) (internal quotation marks omitted)). "Retroactive application does not, however, determine what appropriate remedy (if any) the defendant

should obtain." *Id.*, at 243. Indeed, "[r]emedy is a separate, analytically distinct issue." *Id.* Thus, "the retroactive application of a new rule of substantive Fourth Amendment law *raises* the question whether a suppression remedy applies; it does not answer that question." *Id.*, at 243-44.

In *United States v. Davis*, the Supreme Court held that the good faith exception created in *United States v. Leon*, 468 U.S. 897 (1984), can apply despite the retroactive application of a newly created rule of constitutional criminal procedure. *Id.*, at 249-50. The purpose of suppression through the exclusionary rule is to deter police misconduct. *Leon*, 468 U.S. at 909. The Supreme Court held that an officer who acts "in reliance on binding appellate precedent does no more than act as a reasonable officer would and should act under the circumstances." *Davis*, 564 U.S. at 241 (quoting *Leon*, 468 U.S. at 920) (internal quotation marks and alteration omitted)). Thus, deterrence of police misconduct may not be achieved by suppressing evidence as a result of a retroactively-applied rule. *Id.*, at 249 ("[T]he police in his case reasonably relied on binding Circuit precedent. That sort of blameless police conduct, we hold, comes within the good-faith exception and is not properly subject to the exclusionary rule.").

Here, even if *Glover* ultimately finds that police may not stop a vehicle without affirmatively identifying that it is driven by an unlicensed person and defendant's case remains pending on direct appeal at that time, suppression would not be an appropriate remedy. Officer Kirkpatrick stopped defendant's vehicle in reasonable reliance on *Chartier*, which is binding Eighth Circuit precedent. Thus, Officer Kirkpatrick's conduct falls within the *Leon* good faith exception to the exclusionary rule. The purpose of deterring police misconduct would not be furthered by suppression here. *See Davis*, 564 U.S. at 249. Thus, the Court finds that the resolution of *Glover* does not affect the issue of suppression here.

Thus, the Court **overrules** defendant's objection (Doc. 37, at 7) and **adopts** Judge Roberts' R&R with modification on this issue.

## B. *Search of Defendant's Vehicle and its Contents*

In his R&R, Judge Roberts found that the officers had probable cause to search defendant's vehicle under the automobile exception to the warrant requirement. (Doc. 32, at 8). Although defendant was stopped on suspicion of driving with an invalid license, Officer Kirkpatrick quickly developed probable cause that defendant was also driving under the influence of alcohol. A search incident to defendant's arrest for those offenses recovered cocaine from defendant's sock. Officer Vick also observed empty alcohol containers in defendant's vehicle through the passenger-side window. Judge Roberts concluded that, "[a]t that point, it became reasonable for officers to believe that the vehicle would contain evidence of crimes such as operating while intoxicated, possession of a controlled substance, and open container." (*Id.*, at 9). Thus, Judge Roberts held that the search of defendant's vehicle and its contents did not require a warrant. (*Id.*, at 10).

Defendant objects, arguing that officers should have obtained a warrant because defendant was secured in handcuffs and his vehicle was parked in a secure location. (Doc. 37, at 7-8). Defendant asserts that "[t]he automobile exception . . . is now, in effect, one of the two prongs of the 'search incident to arrest' doctrine set forth in [*Arizona v. Gant*, 556 U.S. 332 (2009)]. The police may no longer automatically search a vehicle when the driver has been arrested." (*Id.*, at 8). Defendant then argues that the search incident to lawful arrest exception to the warrant requirement is inapplicable here because it was "not likely" that evidence of the arresting offenses would be recovered from defendant's vehicle. (*Id.*, at 9-10). As for the offense of operating while intoxicated, defendant asserts that the contents of the vehicle were "only marginally relevant, at best[.]" (*Id.*, at 10). Although defendant acknowledges that Officer Vick

observed open containers in plain view in defendant's vehicle, defendant asserts that "no search of the vehicle was required to document that fact nor was having an open container an [arresting] offense" here.  (*Id.*, at 11).

The automobile exception and search incident to lawful arrest exception to the warrant requirement are separate and distinct exceptions.  *United States v. Shackleford*, 830 F.3d 751, 753 n.2 (8th Cir. 2016).  The automobile exception may be invoked when there is probable cause to believe that an automobile contains contraband or evidence of criminal activity.  *See Gant*, 556 U.S. at 347.  "Probable cause exists where there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007), *cert. denied*, 551 U.S. 1123 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983) (internal quotation marks omitted)).  This exception is justified by the inherent mobility of automobiles and reduced exceptions of privacy in vehicles.  *California v. Carney*, 471 U.S. 386, 391 (1985).  The search incident to lawful arrest exception, however, is justified either by concern for officer safety or the need to collect evidence of the offense of arrest.  *United States v. Robinson*, 414 U.S. 218, 226 (1973).  Under this exception, officers may search "the arrestee's person and the area within his immediate control."  *Chimel v. California*, 395 U.S. 752, 763 (1969).  Officers may search items in the arrestee's vehicle if the arrestee is within reaching distance of the vehicle during the search or "if the police have reason to believe that the vehicle contains evidence relevant to the crime of arrest."  *Davis v. United States*, 131 S. Ct. 2419, 2425 (2011) (internal citation and quotation marks omitted).  "Even after an arrestee has been secured in the back of a police car, officers may search the vehicle incident to an arrest if their observations provide a 'reasonable basis' to conclude that evidence of the crime of arrest 'might be found in the vehicle.'"  *United States v. Allen*, 713 F.3d 382, 387 (8th Cir. 2013) (quoting *United States v. Tinsley*, 365 Fed. App'x 709, 711 (8th Cir. 2010) (per curiam)).

As held in the R&R, the automobile exception properly applies here. Officers not only had probable cause that defendant's vehicle contained evidence of driving while intoxicated, it is undisputed that the officers could see open bottles of alcohol on the passenger floorboard through the window. It is at best inaccurate for defendant to assert that it was "not likely" that evidence of defendant's intoxication would be present in the vehicle. Further, these empty beer bottles are plainly relevant to whether defendant was operating his vehicle while intoxicated. In essence, defendant argues that the presence of the bottles was so apparent that a further search of the vehicle was not justified. Defendant cites no authority for this proposition. It was reasonable for officers to believe that further evidence would be present in the vehicle beyond the evidence that was visible through the windows.[3]

Defendant also argues that he was not arrested for having open containers in his vehicle. Regardless, the presence of these open containers is relevant to driving while intoxicated, the arresting offense here. The automobile exception is also not limited to recovery of evidence of the arresting offense; it merely requires that officers have a probable cause that evidence of some offense is present in the vehicle irrespective of arrest. *See, e.g.*, *United States v. Paige*, 870 F.3d 693, 702 (7th Cir. 2017) ("[T]he searches predicated on the search incident to arrest theory and . . . the automobile exception are interrelated, but not identical. The suspicion required for a vehicle search incident to arrest is keyed to the offense of arrest; the automobile exception is not tied to

---

[3] Defendant does not assert any specific objection as to the search of his backpack, which officers found in his vehicle. The Court notes that the automobile exception applies to containers inside a vehicle so long as there is probable cause to believe evidence is inside the container. *California v. Acevedo*, 500 U.S. 565, 580 (1991). Given the empty bottles on the passenger-side floor, closed bottle of beer in the side-pocket of the backpack, and the backpack's placement next to the driver's seat and near an open case of beer (Ex. 1 at 21:18), the Court finds that probable cause was present to believe the backpack contained evidence of criminal activity, i.e. driving while intoxicated.

an arrest.") (internal quotation marks, citations, and original ellipses omitted)). Beyond the open containers, other evidence also supported the officers' probable cause here. Defendant appeared intoxicated, admitted to drinking several beers, and stated multiple times that he knew he was not sober enough to drive. At one point, defendant told Officer Kirkpatrick that he was "driving and drinking" (Ex. 1 at 5:12), but later denied drinking in the vehicle. On these facts, the automobile exception properly applies and thus officers did not need a warrant here to search defendant's vehicle.[4]

It is also immaterial that defendant's vehicle was parked in the lot of his condominium complex when officers searched it. Defendant argues that because his vehicle was in a "safe" location that the search was improper. The automobile exception does not require any form of exigency. *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). Rather, this exception simply requires that the vehicle be readily mobile and that officers have probable cause to believe it contains evidence of criminal activity. *See, e.g.*, *Carney*, 471 U.S. at 393. This is true even when the vehicle is parked outside a defendant's residence. *See, e.g.*, *United States v. Blaylock*, 535 F.3d 922, 924, 926-27 (8th Cir. 2008); *United States v. Brown*, No. 09-145(JNE/RLE), 2009 WL 2982934, at *10 n.20 (D. Minn. Sept. 14, 2009); *see also United States v. McMillan*, No. 1:15-CR-305, 2016 WL 6834007, at *3 (M.D. Penn. Nov. 21, 2016); *Dixon v. State*, No. 03-05-00037-CR, 2006 WL 1291985, at *1 (Tex. Ct. App. 2006). Thus, the location of defendant's vehicle here, as well as the fact that the vehicle was not towed, are irrelevant to this Court's analysis.

---

[4] The R&R did not hold, and the government did not assert, that the search incident to lawful arrest exception applies to the search of defendant's vehicle. Despite this, defendant's objections are based in this exception. (Doc. 37, at 7-11). As discussed, the Court also finds that the officers had a reasonable belief that evidence of defendant's arresting offense, driving while intoxicated, would be present in his vehicle and backpack. Thus, the search incident to lawful arrest exception, though not argued, would also apply here. *See Gant*, 556 U.S. at 351.

Thus, the Court **overrules** defendant's objections (Doc. 37, at 7-11) and **adopts** Judge Roberts' R&R without modification on this issue.[5]

## V. CONCLUSION

For these reasons, the Court **overrules** defendant's objections (Doc. 37), **adopts** Judge Roberts' R&R with modification (Doc. 32), and **denies** defendant's motion to suppress (Doc. 15).

**IT IS SO ORDERED** this 13th day of February, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[5] The R&R also held that because the stop and search of the vehicle was proper, evidence obtained as a result need not be suppressed under the fruit of the poisonous tree doctrine. (Doc. 32, at 10). Defendant objects to this finding. (Doc. 37, at 11). Because the Court concurs with Judge Roberts that the stop and search here were proper, the fruit of the poisonous tree doctrine is inapplicable. Thus, defendant's objection on this issue is also overruled.